FAULKNER and JONES, Justices
(dissenting):
A unanimous Court of Civil Appeals, and now seven of the nine Justices of this Court, agree with the trial Court’s interpretation of § 30-2 — 55, Ala.Code 1975. Respectfully, we say, even Homer nods, but rarely do so many Homers nod at the same time. Being outnumbered, however, does not dissuade our view that an incorrect and unfortunate interpretation has been placed on this statute.
First, let’s examine the trial Court’s holding: “. . upon petition and proof that the spouse receiving such alimony has remarried . . .’’is interpreted to mean that the filing date of the modification petition is the legal incident which terminates the obligation to pay alimony. In effect, the trial Court says that the word “upon” signifies a time reference. “Upon,” therefore, supplies the “when” element of the event spoken to in the statute. Accordingly, the Petitioner (here, the husband) may have the Court modify his divorce decree by terminating his obligation to pay alimony when (i. e., at the time) he files a petition alleging remarriage of his former wife subject, of course, to proof of this material allegation. Under this interpretation, the trial Court reduced the total child support and alimony by the amount determined to represent alimony as of the filing date of the petition.
We opine that his interpretation is wrong. Only if the word “upon” means “by way of” (i. e., the means, or procedural method) can the statute be accorded any reasonableness or consistency of meaning. The public policy expressed in this statute, coupled with other pertinent statutes, is to the effect that the right of an alimony recipient terminates upon three events: 1) when the decree fixing the obligation is so modified; 2) when the recipient dies, or 3) when the recipient remarries.
Here, the latter — remarriage—is the legal incident that terminates the obligation to pay alimony. “Upon petition and proof” is the statutory means of having this right of termination adjudicated, and this procedural method necessarily follows, in point of time, the legal incident of termination of the alimony obligation.
There is no sound public policy reason to be served by allowing the obligation to run between the time of the remarriage and filing of the petition. Indeed, the statute imposes no requirement of notice by the payee to the payor of the fact of remarriage. The very purpose of alimony is being thwarted where termination of the obligation is dependent upon an imprecise subsequent event — filing of petition — particularly in circumstances where the alimony recipient’s conduct can control or influence the length of such period.
The major fallacy of the trial Court’s interpretation is most apparent in this: If “upon” means “when,” what happens to the “and proof” portion of the time frame? How can he fix the termination date “upon [the filing of the] Petition,” when the statute reads, “upon petition . . and proof.”
The only point we make here is that once “upon” is construed to specify “when,” the combination of the filing of the petition and the proof of its allegations must necessarily be used together in fixing the termination of the alimony date. The statute does not say, “termination of alimony upon petition stating that the spouse has remarried.” Instead, it says, “termination of alimony upon petition and proof that the spouse has remarried.”
We must conclude, therefore, that the trial Court, the Court of Civil Appeals and seven members of this Court have violated their own rules of construction and arbitrarily selected the first half of a two-part condition for fixing the date of termination. To be sure, if “upon” means “at the time of,” and the two events that trigger that time — petition and proof — are conditions precedent to termination, as the clear wording states, the problem is greatly magnified. When is the second event — proof—■ consummated? On the date of the hearing? Or, on the date of the decree of modification? What about delays in docketing such hearing? And what about the duty of the payee to disclose the fact of remarriage?
*599 These questions point up two anomalies:
1) The majority’s construction of the statute accepts only the first half (petition) of a two-part condition as fixing the time of alimony termination without reference to, or explanation of, the disregarded other half (proof). Indeed, the Appellee (former wife) contended in the trial below that she was due alimony up to the date of hearing on the petition to modify. If one accepts the “at the time of” definition of “upon,” Appellee’s position is absolutely correct in that the hearing is the earliest date the proof requirement could be met.
2) The second anomaly lies in the lack of uniformity of application of the “at the time of the filing of the petition” construction. In order to implement the statutory purpose of terminating alimony upon remarriage under this interpretation, one of three things must occur: a) The payee must be honest enough to inform the payor in advance of the remarriage date; b) the payee must voluntarily not accept alimony payments beyond the date of remarriage; or c) the payor must keep a daily vigil on the payee’s remarriage so that the payor can file a petition in advance of the wedding date and schedule a hearing on the following day. As a practical matter, neither of these events will occur. Yet, the Court is content to construe the statute to allow a “windfall profit” to the payee under circumstances of the payee’s making.
We are constrained to address one other point: The rationale of the Court of Civil Appeals that “until there was a determination by the trial court of an allocation of a portion of the award to alimony and a portion to child support, there could legally be no termination of alimony Therefore, the trial court was correct in terminating further alimony to the wife from the date of the filing of the petition for modification.” The problem, here, is that the conclusion does not follow the premise. If we accept this premise as correct, the date of filing and date of hearing and adjudication would have to be the same for the problem suggested in the premise to be met in fixing the termination date. In other words, if alimony can be terminated only after it “is fixed as a sum certain,” then, this is accomplished no more by the filing of a petition than by the fact of remarriage.
Suppose, for example, the petition is filed one month after date of remarriage, but the adjudication fixing the amount as between alimony and child support occurs four months later. How do the filing date and the remarriage date differ in supplying “a determination . . . essential in order for the court to terminate the alimony”? Obviously, there is no difference. Hence, under this rationale, the adjudication date rather than the filing date would terminate alimony in those circumstances where the prior decree awarded alimony and child support without differentiating between the two.
But all of this argument begs the ultimate question, and this for the reason that the premise of the necessity of adjudication to fix the amount of alimony is wrong. The fixing of the amount is a matter of mechanics which trial courts are adept at handling. The mere fact that in any given case the precise sum representing alimony, as opposed to child support, has not been judicially fixed cannot be the source of a holding that until this missing element is supplied there is nothing to terminate. Some portion of the total award is alimony and the legal incident terminating that portion is the recipient’s remarriage. Upon petition and proof, this adjudication can be made; and, once made, it can be given operative effect as of the statutorily contemplated incident of termination- — the date of remarriage.